IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

POLYTREE (H.K.) CO., LTD. and
CINDEX HOLDINGS LIMITED,

               **Plaintiffs,**

   v.                              **1:09-cv-03377-WSD**

FORESTS MANUFACTURING,
LTD.,

               **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiffs Polytree (H.K.) Co., Ltd.'s and

Cindex Holdings Limited's (collectively, "Plaintiffs") Motion for Default

Judgment [17], Motion to File the Motion for Default Judgment Under Seal [18],

and Motion for Leave to File Excess Pages for its Brief in Support of the Motion

for Default Judgment [15]. Plaintiffs are affiliated entities, headquartered in Hong

Kong. (Compl. ¶ 9).

## I.    BACKGROUND

This case arises from Defendant's alleged infringement of Plaintiffs' patents

and false marking of Defendant's products with Plaintiffs' patent numbers.

Plaintiff Polytree owns U.S. Patent No. 6,572,068 ("the '068 Patent") entitled

"Tree Stand." Plaintiff Cindex owns U.S. Patent Nos. 5,527,010 ("the '010 Patent"), entitled "Stand for Supporting an Elongate Object," and 5,869,151 ("the '151 patent"), entitled "Stand."

Defendant made, used, offered for sale, and sold Christmas tree stands in the United States that infringe all three of Plaintiffs' Patents. (Compl. ¶ 19.) Defendant also marked its Christmas tree stands, which it made, offered for sale, and sold in the United States, with the '010 and '151 patents. (Compl. ¶ 20, Ex. D.)[1] Defendant did not seek or obtain permission from Plaintiffs to use their patents. One of the retailers to whom Defendant sold its falsely marked products was Hobby Lobby Stores, Inc., which is located at 890 Cobb Place Boulevard in Kennesaw, Georgia. (Compl. ¶ 29); (Morgan Decl., Ex. 13.) Defendant's product with item number F099-09-T6091 (A) is one of the products it sells that infringes on Plaintiffs' patents and is falsely marked with the '010 and '151 patents. (Compl. ¶¶ 30-31.)

On September 21, 2009, Plaintiffs' counsel sent to Defendant a letter demanding that it cease infringing Plaintiffs' patents and cease marking its products with the '010 and '151 patent numbers. (Morgan Decl., Ex. 3.) On October 19, 2009, Defendant's counsel responded by e-mail, stating that Defendant

---

[1] Plaintiffs allege that Defendant is continuing to infringe their patents and to falsely mark its products with Plaintiffs' Patents. (Compl. ¶¶ 30-31.)

"has no knowledge that [its product] involves any patent rights belonging to" Plaintiffs.  (Morgan Decl., Ex. 5.)  Defendant's counsel contended that Defendant "was warranted and has been expressly authorized" by the "Assignee" of the patents to use them in connection with Defendant's manufacture and sale of Christmas tree stands.  (Id.)   Defendant's counsel promised that Defendant would destroy its remaining inventory of Christmas tree stands and would no longer sell or distribute them.  (Id.)

On October 20, 2009, Plaintiffs' counsel sent another letter requesting that Defendant provide documents identifying how many tree stands have been sold to customers in the United States, the names of these customers, the dates of the sales, and how much Defendant charged for the stands sold.  (Morgan Decl., Ex. 6.) Plaintiffs' counsel asked for a response within five days.  As of November 5, 2009, Defendant's counsel had not responded.  On that same day, Plaintiffs' counsel sent another letter to counsel for Defendant, reiterating its request for documents and informing Defendant's counsel that Plaintiffs planned on pursuing legal action if they did not hear from Defendant's counsel by November 13, 2009.  (Morgan Decl., Ex. 7.)  On November 25, 2009, Plaintiffs' counsel, once more, sent a letter repeating its request for information and announcing their concern that Defendant was continuing to infringe Plaintiffs' patents.  (Morgan Decl., Ex. 8.)  Plaintiffs'

counsel gave Defendant's counsel another extension to provide the requested information and asserted that if the information was not received by December 1, 2009, Plaintiffs would file a lawsuit against Defendant.  (Id.)

On November 30, 2009, Plaintiffs received a letter from counsel for Defendant stating that Defendant was in the process of obtaining new counsel and that Plaintiffs should expect a response from Defendant on December 8, 2009. (Morgan Decl., Ex. 9.)  Nonetheless, on December 2, 2009, Plaintiffs filed their Complaint against Defendant, alleging that Defendant infringed the '068, '010, and '151 patents by manufacturing, selling, offering for sale, and importing Christmas tree stands to the United States.  They contend that Defendant knew about Plaintiffs' patents and "even falsely marked its infringing tree stands with the numbers of Cindex's Patents."  (Pls.' Mot. Default J. at 2.)  They claim Defendant's infringement was willful and in blatant disregard of the patent laws of the United States.

On December 8, 2009, Defendant's new counsel sent an e-mail to Plaintiff's Counsel.  (Morgan Decl., Ex. 10.)  Defendant's counsel denied that Defendant ever infringed any of Plaintiffs' patents.  Defendant's counsel stated that, in the alternative, if it were found that any of Defendant's products involve Plaintiffs' patents, Defendant was authorized to use these patents because it bought the

products in question from the patent owner in Hong Kong or the People's Republic of China.  (Id.)  Defendant's counsel insisted that Defendant maintains the right to sell the Christmas tree stands without Plaintiffs' permission.  (Id.)  Lastly, Defendant's counsel suggested that the United States courts do not have jurisdiction over Defendant.  (Id.)

On that same day, December 8, 2009, Plaintiffs' counsel responded to the e-mail and attached a copy of Plaintiffs' Complaint.  Two days later, on December 10, 2009, the Clerk of Court sent copies of the Complaint and Summons to Defendant's principal place of business in Hong Kong via international express mail.  Additionally, on January 20, 2010, Plaintiffs personally served Defendant at its Hong Kong office and on January 25, 2010, mailed service to Defendant's address in Hong Kong.  Defendant has not filed a responsive pleading in this case and has not appeared in this action.  On March 4, 2010, the Clerk of Court entered a default judgment against Defendant.

On October 22, 2010, Plaintiffs moved for a default judgment against Defendant, pursuant to Rule 55(b) of the Federal Rules of Civil Procedure, seeking a judgment finding Defendant liable for willful patent infringement, under

35 U.S.C. § 271(a), and false marking under 35 U.S.C. § 292(a).  Plaintiffs seek the following relief:

1) Reasonable royalties for the patents reflecting a portion of the cost savings realized by Defendant through its infringing use of the patents in the amount of $26,400 for each patent, for a total award of $79,200;

2) Statutory damages for Defendant's false marking, pursuant to 35 U.S.C. § 292, in the amount of $169.50 for each of the 24,000 known falsely marked articles, for a total award to Cindex of $4,068,000;

3) A trebling of the damages awarded to Plaintiffs as a result of Defendant's egregious conduct and willful infringement pursuant to 35 U.S.C. § 284 in the amount of $237,600;

4) An award of Plaintiffs' reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285 in the amount of $102,460.50 in attorneys' fees and $4,629.73 in costs;

5) A permanent injunction enjoining any future infringement on Plaintiffs' patents by Defendant;

6) An exclusionary order requiring the U.S. Customs and Border Patrol to exclude Defendant's infringing tree stands from the United States; and

7)  Pre-judgment interest pursuant to 35 U.S.C. § 284 and O.C.G.A. § 51-

12-14 at the prime rate plus 3.0% from January 11, 2008, to the date

judgment is entered against Defendant.

Plaintiffs supplemented their Motion for Default Judgment with a supporting

Memorandum of Law, several exhibits, and Declarations by Plaintiffs' attorney,

Jeffrey C. Morgan, and by the Director of both Plaintiffs, Eric Steinmeyer.

On October 22, 2010, Plaintiffs also moved to file their Motion for Default

Judgment under Seal pursuant to Patent Local Rule 2.1 and Rule 26(c) of the

Federal Rules of Civil Procedure.  Additionally, Plaintiffs filed a Motion for Leave

to File Excess Pages for their memorandum in support of their Motion for Default

Judgment, requesting permission to exceed the twenty-five page limit in Local

Rule 7.1D.  Plaintiffs contend that their forty-one page brief is a reasonable length

to establish Defendant's willful patent infringement, false marking, and the six

types of relief to which they are entitled.

Defendant failed to respond to Plaintiffs' Motion for Default Judgment,

Motion for Leave to File Excess Pages, and Motion to Seal.  According to the

Local Rules of this Court, these motions are deemed unopposed.  See LR 7.1B,

NDGa.[2]

---

[2] The Court grants Plaintiffs' Motion for Leave to File Excess Pages.

## II.   DISCUSSION

### A.   Legal Standard for Entry of Default and Default Judgment

Under Rule 55(a) of the Federal Rules of Civil Procedure, the clerk of the court must enter a party's default before the court or clerk may enter a default judgment against the party.  Rule 55(a) provides, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."  Fed. R. Civ. P. 55(a).  The clerk's entry of default is "simply an official recognition of the fact that one party is in default . . . ."  Voter Verified, Inc., v. Premier Election Solutions, Inc., 2010 WL 1002648, at *3 (M.D. Fla. Mar. 18, 2010) (citations omitted).

A defendant's default does not itself warrant the Court entering a default judgment, but by defaulting, the defendant "admits the plaintiff's well-pleaded allegations of fact . . . and is barred from contesting on appeal the facts thus established."  Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987) (citations omitted).  However, a defaulted defendant does not admit to allegations concerning the amount of damages by virtue of default, so a plaintiff must still establish and the court must determine the amount and character of the damages to which the

8

plaintiff is entitled.  Automobili Lamborghini SpA v. Lamboshop, Inc., 2008 WL

2743647, at *2 (M.D. Fla. June 5, 2008) (citations omitted).

Before entering a default judgment, the Court must ensure that is has both

subject matter and personal jurisdiction over the parties.  Pitts ex rel. Pitts v.

Seneca Sports, Inc., 321 F. Supp. 2d 1353, 1356 (S.D. Ga. 2004).  A defendant

must have been properly served for the court to have personal jurisdiction over the

defendant.  Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., 484 U.S. 97, 104

(1987).

In considering whether to enter a default judgment and in what amount, the

Court must ensure that the facts sufficiently establish liability on behalf of the

defaulting party.  Id. at 1357.  Additionally, the "court must investigate the legal

sufficiency of the allegations of the plaintiff's complaint."  Bruce v. Wal-Mart

Stores, Inc., 699 F. Supp. 905, 906 (N.D. Ga. 1988).  After the Court decides that

default is appropriate, the Court or its clerk is required to enter a default judgment

in the amount claimed by the plaintiff when "plaintiff's claim is for a sum certain

or a sum that can be made certain by computation . . . ."  Fed. R. Civ. P. 55(b)(1).

Under such circumstances, a hearing on damages is not required.  S.E.C. v. Smith,

420 F.3d 1225, 1231 (11th Cir. 2005).

B.     Whether Default was Properly Entered against Defendant

   *1.*     *Service*

Service on a corporation outside of the United States can be effected "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents."  Fed. R. Civ. P. 4(f)(1); see Fed. R. Civ. P. 4(h)(2) (service of a foreign corporation in another country should comply with 4(f), except for the provision found in 4(f)(2)(C)(i)).  If "there is no internationally agreed means, or if an international agreement allows but does not specify other means," service may be effected by a means reasonably calculated to provide notice as allowed under the laws governing service of process in the foreign country.  Fed. R. Civ. P. 4(f)(2)(A).  Service may also be effected by "using any form of mail that the clerk addresses and sends to the [corporation] and that requires a signed receipt," as long as the foreign country's laws do not prohibit this type of service.  Fed. R. Civ. P. 4(f)(C)(ii).  "Article 10(a) [of the Hague Service Convention] provides that, if the State of destination does not object, the Hague Convention does not change the freedom to send judicial documents, by postal channels, directly to persons abroad."  TracFone Wireless, Inc. v. Bequator Corp., 717 F. Supp. 2d 1307, 1309 (S.D. Fla. 2010) (citations omitted).  Hong Kong, a

signatory of the Hague Convention, "*does not object* to judicial documents being sent by postal channels pursuant to Article 10(a)." Id.  Serving a foreign corporation in Hong Kong with a copy of the Summons and Complaint by international express mail is permissible under Rule 4(f)(2)(C)(ii).  Id. at 1310; Fed. R. Civ. P. 4(f)(2)(C)(ii); see New Line Int'l Releasing, Inc. v. Marty Toy (USA), 1995 U.S. Dist. LEXIS 7781, at *5 (S.D.N.Y. June 7, 1995) ("[u]nder Hong Kong law, service by mail is permitted").  The laws of Hong Kong permit personal service on a corporation, so personal service on a foreign corporation for purposes of a lawsuit in the United States properly effects service pursuant to Rule 4(f)(2)(A).  In re Cyrus II P'ship, 392 B.R. 248, 259 n.12 (Bankr. S.D. Tex. 2008).

On December 10, 2010, the Clerk of Court sent copies of the Summons and Complaint in this action to Defendant's place of business by international express mail, which satisfied service on a foreign corporation under Rule 4(f)(1), (2)(A), and (2)(C)(ii).  Plaintiffs also properly effectuated service on Defendant pursuant to Rule 4(f)(1) and (2)(A) by personally serving Defendant on January 20, 2010, and by mailing the Summons and Complaint to Defendant on January 25, 2010.  The Court determines that the Defendant was properly served and failed to plead or otherwise defend itself against Plaintiffs' claims.

2.    *Jurisdiction*

After reviewing the pleadings in this case, the Court finds that it has personal jurisdiction over Defendant because Defendant sold infringing and falsely marked articles in this District, (<u>see</u> Morgan Decl., Ex. 13), and on its website, and purports to run a showroom in this District.  (<u>See</u> Morgan Decl., Ex. 12).[3]  When the lawsuit arises out of or is related to the defendant's contacts with the forum, the forum court has specific jurisdiction over the defendant.  <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 414 n.8 (1984).  Additionally, the Court finds that it has subject matter jurisdiction over Plaintiff's claims because this is an action for patent infringement and false marking.  <u>See</u> 28 U.S.C. §§ 1331 and 1338(a).  The Court determines that the Clerk of Court properly entered default against Defendant on March 4, 2010.

C.    <u>Whether Plaintiffs are Entitled to a Default Judgment for Patent Infringement and False Marking</u>

1.    *Patent Infringement*

Patent infringement occurs when one "without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the

---

[3] Defendant's website states that it operates a showroom at 240 Peachtree St. N.W., Atlanta, Georgia.  Forests Manufacturing Ltd, http://www.forests.com.hk/ (last visited Dec. 17, 2010).

United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271.  By failing to answer the Complaint, Defendant is deemed to have admitted Plaintiffs' well-pleaded allegations of facts.  See Mentor Group, LLC v. Wu, 2010 WL 2363511, at *3 (M.D. Fla. May 19, 2010).  The facts in the Complaint established that there is sufficient factual support to show that Defendant infringed the '010, '151, and '068 patents.  See Pitts, 321 F. Supp. 2d at 1357 (S.D. Ga. 2004); (Compl. ¶ 20, Ex. D); (Morgan Decl., Ex. 13).  The Court finds that Defendant is liable for infringing on Plaintiffs' three patents.

### 2.   *False Marking*

Generally, false marking claims are brought under the second clause of § 292(a).  See, e.g., Forest Group, Inc. v. Bon Tool Co., 590 F.3d 1295, 1300 (Fed. Cir. 2009).  The two elements of false marking claims are: (1) marking an unpatented article and (2) doing so with the intent to deceive the public.  Id.  An unpatented article is defined as an article "not covered by at least one claim of each patent with which the article is marked."  Clontech Labs., Inc. v. Invitrogen Corp., 406 F.3d 1347, 1352 (Fed. Cir. 2009).

In this case, Plaintiffs allege that Defendant falsely marked articles "covered by the [Plaintiffs'] Patents."  (Pls.' Memo in Support of Pls.' Mot. Default J. at 13.)

Plaintiffs allege that Defendant violated the first clause of § 292(a), which

provides:

> Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee . . .

35 U.S.C. § 292(a).  Specifically, Plaintiffs contend that Defendant "marked upon,

fixed and used in advertising in connection with tree stands imported, offered for

sale and sold by [Defendant] within the United States the patent numbers for the

'010 and '151 Patents, all without Cindex's consent."  (Memo at 14.)  Plaintiffs

also allege that Defendant "counterfeit[ed] or imitate[ed] [sic] the mark of the

patentee" and "deceiv[ed] the public and induc[ed] them to believe that the

[Christmas tree stands were] made, offered for sale, sold, or imported into the

United States by or with the consent of the patentee."  (Id. at 13.)

There are very few cases addressing false marking claims brought under the

first clause of § 292(a).  See, e.g., High Frequency Prods., Inc. v. Wynn's Climate

Sys., Inc., 892 F. Supp. 1515, 1519 (S.D. Fla. 1995), aff'd 91 F.3d 167 (Fed. Cir.

1996).  False marking claims under the first clause of § 292(a) are referred to as

"patent mismarking" claims.  Id.  A patent mismarking claim requires that a party,

without the consent of the patentee, (1) marked upon or affixed to its article

another's patent, or used another's patent in advertising related to its article, which

was made, offered for sale, or sold in the United States (2) with the intent to

deceive.  See id.

A plaintiff's burden of proving deceptive intent is particularly high.

Pequignot v. Solo Cup Co., 608 F.3d 1356, 1363 (Fed. Cir. 2010).  "Intent to

deceive is a state of mind arising when a party acts with sufficient knowledge that

what it is saying is not so and consequently that the recipient of its saying will be

misled into thinking that the saying is true."  Clontech Labs., 406 F.3d at 1352

(citations omitted).[4]  A plaintiff must prove by a preponderance of the evidence

that the defendant "did not have a reasonable belief that the articles were properly

marked."  Forest Group, 590 F.3d at 1300.  The defendant's assertion that "it did

not intend to deceive, standing alone, is worthless as proof of no intent to deceive

where there is knowledge of falsehood."  Id.  If the defendant made a false

statement and knew that the statement was false, there is a rebuttable presumption

that the defendant has the requisite intent to deceive the public.  Solo Cup, 608

---

[4] The Court notes that although the cases discussing "intent to deceive" do so in the context of the false marking claim in the second clause of § 292(a), the statutory language containing "intent to deceive" refers to both clauses in § 292(a).

F.3d at 1362-1363.  To rebut the presumption, the defendant must prove by a preponderance of the evidence that it did not have the requisite intent to deceive. Id. at 1364.

Plaintiffs provided sufficient factual support to show that Defendant marked some of its Christmas tree stands that it sold in the United States with the '010 and '151 patents, and that the marking was without Plaintiffs' permission.  (See Compl. ¶ 29); (Morgan Decl., Ex. 13.)  Defendant is deemed to have admitted to these well-pleaded allegations of facts.  Plaintiffs have satisfied the first element of a patent mismarking claim.

As to Defendant's intent to deceive, Defendant, in a letter sent by its lawyer, claimed that it was "warranted and expressly authorized" by a seller in China to make, use, and sell products that are marked with Plaintiffs' patents, impliedly acknowledging that products it sold were marked with Plaintiffs' patent numbers. (Morgan Decl., Ex. 5.)  Counsel for Defendant, in a later letter, disclaimed that Defendant ever made, sold, or offered for sale any products marked with Plaintiffs' patents, but stated further that if, *arguendo*, it was proved that Defendant did make, sell, or offer for sale products marked with the '010 patent, Defendant claims it lawfully obtained authorization from the patent owner in Hong Kong or the People's Republic of China.  (Morgan Decl., Ex. 10.)  Defendant did not make

these assertions in this litigation and it did not deny Plaintiffs' claims in the

Complaint that Defendant sold its products, bearing the '010 and '151 patents, in

the United States.

The undisputed facts further are that Cindex is the owner of the '010 and

'151 patents.  (Compl. ¶¶ 11-14.)  Cindex is the only entity that could grant

permission to other parties to mark products with the '010 and '151 patents, and it

did not ever grant permission to Defendant to produce the '010 and '151 patents.

(Memo at 14-15.)  Defendant did not request or obtain permission from Cindex to

mark its tree stands with the '010 and '151 patents.  (Id.)  The allegations of the

Complaint, which are deemed admitted by Defendant, establish that Defendant

sold tree stands in the United States marked with the '010 and '151 patent

numbers.  These admitted facts reasonably infer that Defendant knew it was

mismarking its Christmas tree stands with the '010 and '151 patents.  Plaintiffs

have sufficiently pled a plausible claim for patent mismarking and Defendant is

deemed to have admitted that it falsely marked its products with Plaintiffs' patents.

See Mentor Group, at *3.

D.    Plaintiffs' Monetary Relief

Plaintiffs' requests for damages are for sums certain and the Court is

authorized to enter a default judgment on Plaintiffs' damages.  See Fed. R. Civ. P.

55(b)(1).  Plaintiffs must prove the amount and character of the damages to which they are entitled because Defendant is not deemed to have admitted the amount of damages alleged in the Complaint.  See Automobili Lamborghini, at *2.

  *1. Reasonable Royalties*

If actual damages cannot be ascertained, the Court must determine reasonable royalties.  Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078 (Fed. Cir. 1983).  Section 284 provides that "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284.  Section 284 establishes a "floor below which the courts are not authorized to go."  Del Mar Avionics, Inc. v. Quinton Instrument Co., 836 F.2d 1320, 1326 (Fed. Cir. 1987).  "The methodology of assessing and computing damages under 35 U.S.C. § 284 is within the sound discretion of the district court." TWM Mfg. Co., v. Dura Corp., 789 F.2d 895 (Fed. Cir. 1986) (citations omitted).

A reasonable royalty "may be based upon an established royalty, if there is one, or if not, upon the supposed result of the hypothetical negotiations between the plaintiff and defendant."  Minks v. Polaris Indus., Inc., 546 F.3d 1364, 1372 (Fed. Cir. 2008) (citations omitted).  "The hypothetical negotiation requires the

court to envision the terms of a licensing agreement reached as the result of a

supposed meeting between the patentee and the infringer at the time infringement

began." Id.  Courts look to the factors set forth in Georgia-Pacific Corp. v. U.S.

Plywood Corp., 318 F. Supp. 1116 (S.D.N.Y. 1970).[5]  Id.  Several of the Georgia-

Pacific factors relate to a license agreement between the patent owner and the

infringer and are not relevant here because Plaintiffs and Defendant never had a

license agreement.  See Georgia-Pacific, 318 F. Supp. at 1120 (listing the fifteen

factors).  Where there is not an established royalty rate, "[r]eliance upon estimate

cost savings from use of the infringing product is a well settled method of

determining a reasonable royalty."  Hanson, 718 F.2d at 1080-1081.[6]

Defendant has not produced any information related to its sales of its

infringing and mismarked products and Plaintiffs cannot establish Plaintiffs' lost

profits from Defendant's infringement.  (Memo at 22.)  Plaintiffs also do not have

an established royalty rate for their patents because, as a policy, they do not license

---

[5] The Court notes that Plaintiffs improperly cited this case as a Federal Circuit opinion in their Memorandum of Law.  This case is actually a district court opinion from the Southern District of New York.  Plaintiffs' improper citation is misleading and makes the Court's review process inefficient and more time-consuming than is necessary.  In the future, Plaintiffs should carefully review their citations before submitting pleadings to the Court.

[6] The Court notes that calculating cost savings is only one way to determine a reasonable royalty rate in the absence of an established one, and, finding this measure appropriate under the circumstances in this case, the Court allows Plaintiffs to determine their royalty rate in this manner.

their patents.  (Id.)  Plaintiffs thus request the Court to determine a reasonable

royalty based on cost savings to manufacture Defendant's 24,000 infringing stands

that Defendant sold to Hobby Lobby on January 11, 2008.[7]  (Id.); (see Morgan

Decl., Ex. 15.)  Since Plaintiffs ship their products from Hong Kong to the United

States, as does Defendant, both parties seek ways to reduce manufacturing and

freight costs, and calculated cost savings, Plaintiffs suggest, is a practical means of

determining a royalty rate for use in determining Plaintiffs' damages.

In determining the cost savings Defendant achieved by its infringing

conduct, Plaintiffs refer to another one of their products, the Lincoln tree stand.

Plaintiffs assert that a non-infringing tree stand, like the Lincoln one, is more

expensive to manufacture and to ship.  Specifically, the Lincoln tree stand costs

$0.80 more to manufacture and $3.07 more to ship.  (Memo at 25.)  Thus, by

infringing Plaintiffs' patents in this case, Defendant, Plaintiffs assert, saved $3.87

per tree stand.  (Id.)  Plaintiffs presume that Defendant incurred similar cost

savings by infringing on their patents.  Plaintiffs propose a reasonable royalty of

$1.00 per infringing tree stand for each patent, amounting to $3.00 per infringing

tree stand.  This would allow Defendant a $0.87 profit per infringing tree stand.

---

[7] Plaintiffs do not have evidence of Defendant's other sales of infringing tree
stands, because of Defendant's failure to provide information regarding its sales to
Plaintiffs, so Plaintiffs only rely on the one invoice they have in calculating
reasonable royalties.

To this royalty amount, Plaintiffs argued that the Court should add $0.10 per patent per unit to its reasonable royalty rate to account for the "Panduit factor." See FMT Corp., v. Nissei ASB Co., 1993 U.S. Dist. LEXIS 19625, at *15-16 (N.D. Ga. Sept. 27, 1993) (finding an increase in the royalty award by two percentage points to 10% is warranted under the "Panduit factor" because plaintiff, a small entity, "was forced to pursue the defendant to and through time-consuming and costly litigation"); Panduit Corp. v. Stahlin Bros. Fibre Works, 575 F.2d 1152 (6th Cir. 1978).  This increase would be 10% of the $1.00 rate per infringing tree stand per patent.  The Panduit factor is necessary because charging an infringer what a non-infringer would have paid would put the infringer "in no worse position than if it had agreed to pay a license fee prior to beginning infringement." FMT Corp., at *15-16.  Plaintiffs' proposed total reasonable royalty rate is $3.30 per infringing Christmas tree stand.

Defendant sold at least 24,000 infringing tree stands since January 11, 2008.  (Memo at 18.)   Using a reasonable royalty of $3.30 per unit, the rate amounts to $26,400 for each patent, for a total award of $79,200.  Plaintiffs' proposed reasonable royalties for the patents reflect a portion of the cost savings realized by Defendant through its infringing use of Plaintiffs' patents.  The Court finds that an

award of $79,200, which likely accounts for less than what Plaintiffs suffered in damages, is reasonable.

### 2.   Statutory Damages

A party found liable for false marking under 35 U.S.C. § 292 "[s]hall be fined not more than $500 for every such offense."  35 U.S.C. § 292(a).  The statute requires "that each article that is falsely marked with intent to deceive constitutes an offense . . . ."  Forest Group, 590 F.3d at 1301.  In other words, "every falsely marked product constitutes an 'offense' under § 292."  Solo Cup, 608 F.3d at 1365 (citing Forest Group, 590 F.3d at 1301).  On remand, the district court in Forest Group noted that the defendant sold the falsely-marked products at prices between $103.00 and $180.00.  Forest Group, Inc. v. Bon Tool Co., 2010 WL 1708433, at *2 (S.D. Tex. Apr. 27, 2010).[8]  The court determined that the appropriate fine in that case was $180.00 per article, the "highest point of the price range," because that would "deprive [the defendant] of more than it received for the falsely-marked [products], fulfilling the deterrent goal of § 292's fine provisions."  Id.

---

[8] The Court notes that since the Federal Circuit decided the Forest Group decision in 2009, which construed "offense" in § 292 to mean every falsely marked product as opposed to the continuous false marking of the same type of product, there are only a few cases to look to for guidance that apply the Forest Group construction.

Plaintiffs urge the Court to apply the approach used in <u>Forest Group</u>. Plaintiffs are only aware of the prices of a limited number of trees sold by Defendant.  The prices range from $30.27 to $169.50.  (Memo at 17.)  Defendant falsely marked 24,000 articles.  The Court notes that the items manufactured vary materially in price from $30.27 per unit to $169.70.  Because of this price variation, the Court determines that the $169.70 per unit price should be reduced by fifty percent (50%) and this price ($84.75) will be applied to the 20,400 units sold at prices of $30.27 or $67.70.  (<u>See</u> <u>id.</u>)  The Court determines that applying the highest unit price of $84.75 for these substantially lower price units achieves the deterrent goal of § 292's fine provisions.  Using the "highest point of the price range," $169.50, for the 3,600 articles amounts to a total fine for these units of $610,200.  (<u>See</u> <u>id.</u>)  Applying an $84.75 highest point of the price range to the remaining 20,400 articles amounts to a total fine for them of $1,728,900, for an aggregate fine of $2,339,100.  One half of the aggregate fine amount, or $1,169,550, will be paid to the United States treasury.  <u>See</u> 35 U.S.C. § 292(b).

### 3.   *Trebling of Damages*

Under 35 U.S.C. § 284, "the court may increase the damages up to three times the amount found or assessed."  A finding of willfulness authorizes, but does not compel, an award of enhanced damages under § 284.  <u>State Indus., Inc. v. Mor-</u>

Flo Indus., Inc., 948 F.2d 1573, 1576 (Fed. Cir. 1991).  When determining whether
to increase damages, the district court must first determine whether willful
infringement occurred or other circumstances justifying increased damages are
present.  Id.  Then, the court must determine whether, under the totality of the
circumstances, increased damages are warranted.  Id.  The district court has sole
discretion in making this determination.  Juicy Whip, Inc. v. Orange Bang, Inc.,
382 F.3d 1367, 1370 (Fed. Cir. 2004).

It is important to note that "[e]nhanced damages are a punitive measure
taken by a court to penalize a willful infringer for increased culpability."  Powell v.
Home Depot U.S.A., Inc., 715 F. Supp. 2d 1285, 1296 (S.D. Fla. 2010) (citing
Jurgens v. CBK, Ltd., 80 F.3d 1566, 1571 (Fed. Cir. 1996)).  To prove willful
infringement, patent owner "must show by clear and convincing evidence that the
infringer acted despite an objectively high likelihood that its actions constituted
infringement of a valid patent."  In re Seagate Tech., LLC, 497 F.3d 1360, 1371
(Fed. Cir. 2007).  The infringer's state of mind is irrelevant in this determination.
Id.  If the patent owner satisfies the threshold objective standard, it must "also
demonstrate that this objectively-defined risk [] was either known or so obvious
that it should have been known to the accused infringer."  Id.

"The paramount determination in deciding to grant enhancement and the amount thereof is the egregiousness of the defendant's conduct based on all the facts and circumstances." Read Corp. v. Portec, Inc., 970 F.2d 816, 826 (Fed. Cir. 1992) (superseded on other grounds as recognized in Hoechst Celanese Corp. v. BP Chem. Ltd., 78 F.3d 1575, 1578 (Fed Cir. 1996)).  The Federal Circuit set forth nine non-exclusive factors that district courts should look at when considering enhancing damages: (1) whether the infringer deliberately copied the ideas or design of another; (2) whether the infringer, when he knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed; (3) the infringer's behavior as a party to the litigation; (4) the infringer's size and financial condition; (5) the closeness of the case; (6) the duration of the infringer's misconduct; (7) remedial action by the infringer; (8) the infringer's motivation for harm; and (9) whether the infringer attempted to conceal its misconduct.  Id. at 827.

Plaintiffs seek treble damages as a result of Defendant's egregious conduct and willful infringement pursuant to 35 U.S.C. § 284 in the amount of $237,600. By failing to answer the Complaint, Defendant is deemed to have admitted the plaintiff's well-pleaded allegations of fact, including the fact that Defendant

willfully infringed the patents.  <u>See</u> <u>Mentor Group</u>, at *3.  The Court is thus

authorized to award enhanced damages.

In determining whether enhanced damages are warranted, the Court

examines the <u>Read</u> factors.  The first factor favors Plaintiffs' position because

Defendant deliberately copied Plaintiffs' inventions covered by the Patents.  (<u>See</u>

Morgan Decl., Ex. 5.)  The third factor favors Plaintiffs because Defendant, having

been properly served, has failed to even appear in this action.  Factor eight favors

Plaintiffs because although Defendant vowed to destroy its infringing inventory,

Defendant submitted no further proof that it complied with this promise.  Factor

nine favors a finding of enhanced damages because Defendant, through its new

counsel, attempted to disavow its previous counsel's statements, insisting that it

was not selling products involving Plaintiffs' patents.  (<u>See</u> Morgan Decl., Ex. 10.)

As to the remaining factors, Plaintiffs have not presented enough persuasive

evidence, or do not have such evidence, for the Court to determine whether these

factors favor an enhanced damages award.  The Court is mindful that Defendant's

refusal to participate in discovery or even appear in this action has impaired

Plaintiffs' ability to gather all of the relevant evidence.  Nevertheless, the Court

finds that, under the totality of the circumstances and after evaluating the <u>Read</u>

factors, the evidence is sufficient to justify some enhancement of damages but is

not so clear-cut and overwhelming to justify the maximum enhancement.  The

Court determines that an award of two times the damages award under § 284 is

appropriate.  See PODS, Inc. v. Porta Stor Inc., 2006 WL 2473636, at *1 (M.D.

Fla. Aug. 25, 2006) (doubling the damages award).  Thus, total § 284 damages are

awarded in the amount of $158,400.

### 4.    Attorneys' Fees

After a finding of liability for patent infringement, "the court in exceptional

cases may award reasonable attorney fees to the prevailing party."  35 U.S.C.

§ 285.  The moving party must demonstrate that the case is extraordinary by clear

and convincing evidence.  Wedgetail Ltd. v. Huddleston Deluxe, Inc., 576 F.3d

1302, 1304 (Fed. Cir. 2009).  The Court may then, at its discretion, award

attorneys' fees, if appropriate.  Id.  "A case may be deemed exceptional when there

has been some material inappropriate conduct related to the matter of litigation,

such as willful infringement, fraud or inequitable conduct in procuring the patent,

misconduct during litigation . . . or like infractions."  Brooks Furniture Mfg., Inc.

v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005).  A finding of

willfulness authorizes, but not does require, a court to award attorney fees.  Group

One, Ltd. v. Hallmark Cards, Inc., 407 F.3d 1298, 1308 (Fed. Cir. 2005); see

White v. Mar-Bel, Inc., 509 F.2d 287, 292 (5th Cir. 1975) (upholding trial court's

refusal to find case exceptional even though patent infringement was found to be willful).  Willful infringement that was not at "the most egregious end of the spectrum," and which resulted in the Court awarding double, as opposed to treble, damages, was not considered exceptional such that attorney's fees were warranted. Hako- Med USA, Inc. v. Axiom Worldwide, Inc., 2009 WL 3064800, at *4, 12 (M.D. Fla. 2009).  Willful infringement has been deemed exceptional where the infringer deliberately copied another party's patents *and* attempted to hide information from its patent attorney.  Goodwall Constr. Co. v. Beers Constr. Co., 991 F.2d 751, 758-759 (Fed. Cir. 1993) (emphasis added).  Cases involving a party's "bad-faith business conduct" towards another party prior to ligation are not exceptional.  See Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1329 (Fed. Cir. 2003).

Plaintiffs seek attorney fees based on Defendant's alleged willful infringement and litigation misconduct.[9]  Plaintiffs conclusorily assert that Defendant willfully infringed their patents.  Plaintiffs do not set forth any further explanation or evidence supporting its assertion that this is an exceptional case. Plaintiffs do not cite any case in which a plaintiff was awarded attorneys' fees following default judgment of patent infringement.  See Hubbard/Downing, Inc.,

---

[9] Because Defendant has not appeared in this case, it cannot be held to have engaged in litigation misconduct.

d/b/a Hans Performance Prods., v. Innovative Safety Tech., LLC, No. 09 Civ. 939

(N.D. Ga. Aug. 5, 2010) (denying attorney's fees for several reasons, one being

that plaintiff failed to provide any cases where the court awarded attorneys' fees

following default judgment of patent infringement).  Moreover, Defendant's failure

to defend in this action likely reduced Plaintiffs' litigation expenses, and an

additional award of attorneys' fees is not justified here.  See id.  Plaintiffs have not

demonstrated by clear and convincing evidence that this is an exceptional case.

See Wedgetail, 576 F.3d at 1304.  Having reviewed the record, the Court finds that

this is not an exceptional case and Plaintiffs' request for attorneys' fees is denied.

### 5.    Pre-Judgment Interest

The Supreme Court held that, in patent infringement cases, "prejudgment

interest should be awarded under § 284 absent some justification for withholding

such an award."  Gen. Motors Corp. v. Devex Corp., 461 U.S. 648, 657 (1983).

An award of prejudgment interest is not required every time infringement is found,

but is left to the discretion of the court and shall be "fixed by the court."  Id.; see

35 U.S.C. § 284.  Prejudgment interest should be "withheld only under exceptional

circumstances."  Sensonics, Inc. v. Aerosonic Corp., 81 F.3d 1566, 1574 (Fed. Cir.

1996) (citing Gen. Motors, 461 U.S. at 656).  The Supreme Court stated that

exceptional circumstances warranting a court to limit or even deny a patent

owner's award of prejudgment interest include situations where the patent owner unduly delayed prosecuting the lawsuit.  <u>Gen. Motors</u>, 461 U.S. at 657.  "There may be other circumstances in which it may be appropriate not to award prejudgment interest," but the Court did not ascertain any other circumstances.  <u>Id.</u> The difficulty in calculating prejudgment interest is not considered exceptional circumstances.  <u>Sensonics</u>, 81 F.3d at 1574.

The rate used to calculate the prejudgment interest is committed to the discretion of the district court.  <u>Powell</u>, 715 F. Supp. 2d at 1300.  Courts have recognized that "an award of compound rather than simple interest assures that the patent owner is fully compensated."  <u>Rite-Hite Corp. v. Kelley Co., Inc.</u>, 56 F.3d 1538, 1555 (Fed. Cir. 1995).  The purpose of prejudgment interest is to compensate a patent owner, not punish an infringer.  <u>Hako- Med USA, Inc. v. Axiom Worldwide, Inc.</u>, 2009 WL 3064800, at *13 (M.D. Fla. 2009).  An award of prejudgment interest should be calculated from the beginning of the infringement to the date of the court's judgment.  <u>Goodwall Constr. Co. v. Beers Constr. Co.</u>, 824 F. Supp. 1044, 1058 (N.D. Ga. 1992) (citations omitted).  An award of prejudgment interest should only be applied to the actual damages award, not to any punitive or enhanced damages.  <u>Id.</u>

There are no circumstances demonstrating that this is an exceptional case where prejudgment interest should be denied.  The Northern District of Georgia has applied Georgia's statutory interest rate, found in O.C.G.A. § 51-12-14, which directs plaintiffs to the U.S. Prime Rate, in calculating a prejudgment interest award for patent infringement.  Intervet Am., Inc. v. Kee-Vet Labs., Inc., 1991 U.S. Dist. LEXIS 19381, at *3-4 (N.D. Ga. 1991); see also Goodwall Constr., 824 F. Supp. at 1058 (applying the U.S. Prime Rate to the prejudgment interest award); Hako-Med USA, at *13 (using the U.S. Prime Rate).  Section 51-12-14 provides that the interest should be calculated "at an annual rate equal to the primate rate as published by the Board of Governors of the Federal Reserve System . . . plus 3 percent . . . ."  O.C.G.A. § 51-12-14.  Since December 16, 2008, the prime rate has been set at 3.25%.  (Morgan Decl., Ex. 16.)[10]  Plaintiffs propose a prejudgment interest award in the amount of 3.25% plus 3.0% to be compounded annually from January 11, 2008, the first known date of invoice for Defendant's sale of an infringing tree stand,[11] to the date judgment is entered in Plaintiffs' favor.  See

---

[10] See Prime Rate History, http://www.wsjprimerate.us/wall_street_journal_prime_rate_history.htm (last visited Dec. 14, 2010).

[11] Plaintiffs are not aware of the earliest date of Defendant's infringement because of Defendant's failure to provide information regarding its sales to Plaintiffs, so Plaintiffs rely on the first known date that Defendant transacted a sale of an infringing product with Hobby Lobby.  (See Morgan Decl., Ex. 15.)

O.C.G.A. § 51-12-14.  The Court finds Plaintiffs' proposed calculation for their

prejudgment interest award appropriate under the circumstances of this case and

prejudgment interest is allowed.

      E.        <u>Plaintiffs' Equitable Relief</u>

      Plaintiffs seek a permanent injunction enjoining any future infringement of

Plaintiffs' patents by Defendant and an exclusionary order requiring the United

States Customs and Border Patrol to exclude Defendant's infringing tree stands

from the United States.

      *1.     Permanent Injunction*

      Courts "may grant injunctions in accordance with the principles of equity to

prevent the violation of any right secured by patent, on such terms as the court

deems reasonable."  35 U.S.C. § 283.  To obtain a permanent injunction, a plaintiff

must show that: (1) it has suffered an irreparable injury; (2) the remedies available

at law are inadequate to compensate plaintiff for the injury; (3) considering the

balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) the public interest would not be disserved by a permanent

injunction.  <u>eBay Inc. v. MercExchange, L.L.C.</u>, 547 U.S. 388, 391 (2006).  The

decision to grant or deny a permanent injunction is subject to the discretion of the

district court.  Id. (citations omitted).  This four-factor test is applicable when a

plaintiff seeks an injunction pursuant to a default judgment.  Telequip Corp. v. The

Change Exch., 2006 WL 2385425, at *2 n.2 (N.D.N.Y. Aug. 15, 2006).

Plaintiffs have established irreparable injury by showing that Plaintiffs and

Defendant are direct competitors in the Christmas tree stand market.  See Emory

Univ. v. Nova Biogenetics, Inc., 2008 WL 2945476, at *4 (N.D. Ga. July 25,

2008); see also Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1328 (Fed. Cir.

2008) ("infringement may cause a patentee irreparable harm not remediable by a

reasonable royalty").  Plaintiffs do not have an adequate remedy at law since only

an injunction would protect Plaintiffs against future infringement by the

Defendant, which "may have market effects never fully compensable in money."

See Emory Univ., at *5.  The balance of hardships favors Plaintiffs because the

only burden an injunction would impose on Defendant is the cost of forgoing

infringing conduct, and the Court does not consider the costs of creating the

infringing product in this determination.  See Acumed LLC, 551 F.3d at 1330.

Without an injunction, Plaintiffs face loss of market share and harm to their

reputation.  See Flexiteek Ams., Inc. v. PlasTEAK, Inc., 2009 WL 2957310, at *9

(S.D. Fla. Sept. 15, 2009).  Finally, the public interest would be served by a

permanent injunction because "the public is best served by enforcing patents that

are likely valid and infringed." Abbott Labs. V. Andrx Pharms., Inc., 452 F.3d

1331, 1348 (Fed. Cir. 2006). The Court finds that it is in the best interest of the

public to enjoin Defendant's infringement. Plaintiffs' request for a permanent

injunction enjoining Defendant from infringing on Plaintiffs' patents in the future

is granted.

       2.    *Exclusionary Order*

     In addition to filing a domestic lawsuit, a patent owner can sue for

infringement through importation in a district court or in front of the International

Trade Commission ("ITC"). Texas Instruments Inc. v. Tessera, Inc., 231 F.3d

1325, 1330 (Fed. Cir. 2000); see 19 U.S.C. § 1337. When the patent owner seeks

relief in a district court, instead of the ITC, the patent owner must additionally

request that the U.S. Customs and Border Protection ("CBP") enforce the district

court judgment by seizing the offending goods. Id. The district court can grant a

party "any relief [the party] could have obtained in the ITC." Freres v. Yucheng

Lujian Biological Co., 2009 U.S. Dist. LEXIS 88637, at *3 (D.N.J. Sept. 25,

2009); see Ciena Corp. v. Nortrel Networks, 2005 U.S. Dist. LEXIS 20095, at *22

(E.D. Tex. May 19, 2005) (the court can "fashion an injunctive remedy that will

allow [the patent owner] much the same relief it could obtain before the ITC").

The ITC can issue exclusion orders to bar infringing products from entering the

United States.  <u>Fuji Photo Film Co., Ltd. v. Int'l Trade Comm'n</u>, 474 F.3d 1281,

1286 (Fed. Cir. 2007); <u>see</u> 19 U.S.C. § 1337.  If a court issues an order finding

patent infringement, and the infringing party is not complying with the order, the

court can take action to enforce its order by directing the CBP to exclude any of

Defendant's infringing products from entry into the United States.  <u>See</u> <u>Freres</u>, at

*4-5.

Having determined that Plaintiffs are entitled to a permanent injunction and

that Defendant imported infringing products into the United States pursuant to 19

U.S.C. § 1337, the Court finds that Plaintiffs are also entitled to enjoin Defendant

from importing any infringing or mismarked products into the United States.  The

Court directs the CBP to exclude any of Defendant's Christmas tree stands marked

with the '010 or '151 patent numbers, and any other tree stands infringing the three

patents, particularly item F099-090-T6091 (A), from entry into the United States.

The Court notes that Plaintiffs are responsible for requesting that the CBP enforce

this order by seizing Defendant's products, which Plaintiffs must specifically

identify to CBP.

E.    <u>Plaintiffs' Motion to Seal</u>

Courts have the authority to "seal" or prevent public access to documents or

proceedings under Rule 26(c) of the Federal Rules of Civil Procedure.  Fed. R.

Civ. P. 26(c).  The moving party must show good cause for the court to "issue an order to protect [the moving party] from annoyance, embarrassment, oppression, or undue burden or expense . . . requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specific way."  Id. at 26(c)(1)(G).

The court, as "the primary representative of the public interest in the judicial process," has the duty of reviewing any request to seal and ensuring that it is supported with good cause.  In re Estate of Martin Luther King, Jr., Inc. v. CBS, Inc., 184 F. Supp. 2d 1353, 1363 (N.D. Ga. 2002).  Courts must (1) determine whether the moving party has presented valid grounds for the issuance of a protective order and (2) balance the public's interest in access against the litigant's interest in confidentiality.  Id. at 1366.  Parties can only file documents under seal if they demonstrate extraordinary circumstances and particularized need.  See Brown v. Advantage Eng'g, Inc., 960 F.2d 1013, 1016 (11th Cir. 1992).  The moving party must show that it "consistently treated the information [in the documents] as closely guarded secrets, that the information represents substantial value to [the moving party], that it would be valuable to the [moving party's] competitors, and that it derives its value by virtue of the effort of its creation and

lack of dissemination." Chi. Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1313-1314 (11th Cir. 2001).

Plaintiffs assert that their Motion for Default Judgment and accompanying memorandum should be sealed because these documents contain "confidential research, development, commercial and technical information . . . including without limitation information relating to costs, prices and profits arising from Plaintiffs' sales of Christmas tree stands incorporating the patents at issue." (Pls.' Mot. to Seal, 1-2). Plaintiffs substantially mischaracterize the documents they seek to protect. The documents submitted include an invoice listing the amount of Plaintiffs' expenses on a monthly basis, a description of the work performed by Plaintiffs' attorneys in preparation of and during this litigation, a declaration of service from the process server, correspondence between Plaintiffs and Defendant prior to this lawsuit, two screenshots of Defendant's website, a copy of a sales receipt from Hobby Lobby, a subpoena to Defendant to produce documents and testify in this action, business records from Hobby Lobby and an accompanying Declaration verifying the authenticity of the records, and a history of the U.S. Prime Rate from 1947 to the present. Plaintiffs also submitted Declarations by their attorney, generally describing the progression of this case, and one by the Director for both Plaintiffs, describing Plaintiffs' business.

Plaintiffs do not specifically articulate why these documents are confidential.  Plaintiffs do not explain which statements from their Motion for Default Judgment, supporting memorandum, and nineteen additional attachments constitute trade secrets or other confidential information.  It is not clear why statements such as "Defendant Forests is a direct competitor of Plaintiffs'" and "Plaintiffs have never given Defendant Forests or any competitor permission to mark Forests' accused Christmas tree stands with [Plaintiffs'] patent numbers" are confidential.  (Steinmeyer Decl. ¶¶ 5, 7.)  Additionally, Plaintiffs took the history of the U.S. Prime Rate from a public website on the Internet, and there is no reason to order that this public document be kept private.  (See Morgan Decl., Ex. 16); supra note 7.  Plaintiffs have not demonstrated that they "consistently treated [these documents] as closely guarded secrets, that the information represents substantial value to [them], [and] that it would be valuable to the [their] competitors . . . ." See Chi. Tribune, 263 F.3d at 1313-1314.  Plaintiffs failed to put forth any legal authority supporting their Motion to Seal and have not provided good cause for filing their Motion for Default Judgment and accompanying documents under seal. Plaintiffs' Motion to File Under Seal is denied.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Default Judgment [17] is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, Plaintiffs' Motion for Default Judgment against Defendant for a finding of willful patent infringement, under 35 U.S.C. § 271(a), and false marking under 35 U.S.C. § 292(a), is **GRANTED**.  Plaintiffs' Motion for Default Judgment is **DENIED** with respect to Plaintiffs' request for treble damages, because the Court orders the damages should be doubled instead of tripled, **DENIED** with respect to Plaintiffs' request for attorneys' fees, and **GRANTED** on all other requests for relief. Defendant is ordered to pay (1) reasonable royalties due to its infringing use of Plaintiffs' patents for a total award of $79,200; (2) statutory damages for its false marking for a total award of $2,339,100[12]; and (3) a doubling of the damages awarded to Plaintiffs as a result of Defendant's willful infringement in the amount of $158,400.  Defendant is (4) permanently enjoined from further infringement on the '068, '010, and '151 patents.  The Court also (5) directs U.S. Customs and Border Patrol to exclude entry from the United States any Christmas tree stand imported by Defendant marked with the '010 or '151 patents, including the stand with item number F099-090-T6091, and any of Defendant's products incorporating the inventions of the three patents.  Lastly, the Court orders Defendant to award

---

[12] Only half of this award, $1,169,550, will go to Plaintiffs and the other half will go to the United States.

Plaintiffs (7) prejudgment interest at the prime rate of 3.25% plus 3.0% to be compounded annually from January 11, 2008, to the date of this Order.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to File the Motion for Default Judgment Under Seal [18] is **DENIED** and Plaintiffs' Motion for Leave to File Excess Pages for its Brief in Support of the Motion for Default Judgment [15] is **GRANTED**.

**SO ORDERED** this 20th day of December, 2010.

WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE